**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vickie Eckdahl,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-22-08090-PCT-DLR<br><br>**ORDER** |

At issue is the denial of Plaintiff Vickie Eckdahl's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14), Defendant Social Security Administration Commissioner's Response Brief (Doc. 17), and Plaintiff's Reply Brief (Doc. 20). The Court has reviewed the briefs, Administrative Record (Doc. 13, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 41-54) and affirms the ALJ's decision for the reasons addressed herein.

**I.     BACKGROUND**

Plaintiff protectively filed an application for DIB on April 29, 2020, alleging disability beginning on November 21, 2015. Plaintiff later amended her disability onset date to March 2, 2019, during her hearing. (R. at 41). Plaintiff's claims were denied initially on June 29, 2020, and upon reconsideration on October 9, 2020. (*Id*.) Plaintiff testified before an ALJ in a telephone hearing regarding her claims on April 5, 2021. (*Id*.) The ALJ

denied her claims on May 5, 2021. (R. at 41-54). On March 29, 2022, the Appeals Council denied her request for review of the ALJ's decision. (R. at 1-6). On May 19, 2022, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of degenerative disc disease, status post lumbar and cervical spine fusions, bilateral carpal tunnel syndrome, bilateral hand degenerative joint disease, obesity, and asthma. (R. at 45).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 53). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 47). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a)" with certain function limitations and concluded that Plaintiff "was able to perform her past work as generally performed." (R. at 48, 53).

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more

than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

**III.   ANALYSIS**

Plaintiff raises two arguments for the Court's consideration: (1) whether Plaintiff's symptom testimony was erroneously rejected, and (2) whether the ALJ properly considered the opinions of Plaintiff's treating medical providers and the third-party witness statement. (Doc. 14 at 3).  Plaintiff also requests this Court to remand the case for an award of benefits. (Doc. 14 at 4).

**A. The ALJ did not err in rejecting Plaintiff's symptom and pain testimony.**

Plaintiff argues the ALJ failed to identify any inconsistencies in the record between Plaintiff's allegations and the medical evidence. (Doc. 14 at 16).

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040).

The ALJ's decision accounted for Plaintiff's impairments encompassing degenerative disc diseases, status post lumbar and cervical spine fusions, bilateral carpal tunnel syndrome, bilateral hand degenerative joint disease, obesity, and asthma. (R. at 45).

Plaintiff testified that she experienced pain in all her joints, especially her arms, legs and hands, and medication only helped the pain a little. (R. at 67). Plaintiff stated she cannot sit in a normal chair for very long and sits in a recliner most of the day to keep her legs elevated due to the severe pain from her knees to her ankles. (R. at 68). Plaintiff further testified that she can only lift a gallon of milk, can sit without her legs elevated for only five minutes, and uses a cane all the time because she's afraid of falling. (R. at 69, 73). Plaintiff asserted that she has trouble reading and cannot retain information, the severe pain in her fingers and wrists wakes her up at night, and she cannot manipulate a screwdriver or write a letter with a pen. (R. at 70-71). Plaintiff further testified that she has undergone three spinal surgeries and she is not a candidate for further surgeries; however, she was waiting to enter a trial to have a spinal stimulator installed to cancel the pain. (R. at 72). Plaintiff also claimed that her spinal disorders caused urinary incontinence and she needs to bring extra clothes when she leaves the house. (R. at 72-73).

The ALJ considered the level of Plaintiff's medical issues and found that her "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record...." (R. at 48-49). The ALJ then cited to specific examples in the record to support her findings. Plaintiff, however, argues that the ALJ failed to specifically identify any inconsistencies between Plaintiff's limitations and the medical evidence in the record. (Doc. 14 at 16). The Court does not agree with Plaintiff's arguments. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount her testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ also relied on Plaintiff's improvement with treatment and her daily living activities as additional reasons for discrediting Plaintiff's symptom testimony. (R. at 48-51).

The ALJ's discussion regarding Plaintiff's physical impairments noted that an August 2020 MRI revealed spinal postoperative changes and mild stenosis. (R. at 49, 525).

A lumbar MRI performed the same month reflected disc protrusion and postoperative changes, but no other evidence of significant spinal stenosis. (R. at 49, 523). The interbody spacer device was in place, the lumbar vertebral bodies were normal in appearance, and Plaintiff's alignment, facet joints and soft tissue were all normal. (R. at 49, 523). Plaintiff argues that the ALJ erred in finding Plaintiff's allegation that the "screws are rotating" in her back from a previous surgery was not supported by the record. (Doc. 14 at 16-17, 49, 509). However, a September 2020 CT of Plaintiff's lumbar spine showed postoperative changes without evidence of hardware failure, loosening or displacement; only mild diffuse degenerative changes, and no evidence of spinal stenosis. (R. at 49, 521). The ALJ found that while some medical reports were consistent with a few of Plaintiff's abnormalities, there was no evidence of severe stenosis, no significant nerve root impingement, no infections, tumors, or fractures to cause the severity of pain and limitations alleged. (R. at 49). Nevertheless, the ALJ accounted for many of Plaintiff's limitations in the RFC. (R. at 49). Clearly, the record exposes conflicting evidence between the Plaintiff's testimony and the treatment notes, but it is the ALJ's responsibility "'for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The Court finds the ALJ has met her burden in providing sufficient explanations to support her decision.

Plaintiff further argues that the ALJ committed error because her decision discussed that Plaintiff was observed ambulating with the use of a cane at times, but the cane was not prescribed, and this was an inaccurate account by the ALJ. (Doc. 14 at 17-18, R. at 49). Plaintiff then asserts that the cane was prescribed by nurse practitioner Kimberly Wingard and boldly points to a citation in the record to prove her position. (Doc. 14 at 18). The Court finds this representation is misplaced. The citation in question is not a prescription for a cane, but an August 2019 examination report establishing Plaintiff as a new patient and Plaintiff was **observed** "using a cane for mobility." (R. at 411). There was no cane prescription administered by the nurse practitioner. Further, the ALJ discussed that many

of Plaintiff's medical providers routinely observed that she arrived at medical appointments without any assistive devices to ambulate, but in 2020, Plaintiff started to appear at some appointments with a cane. (R. at 50, 569-1185, 519, 531, 902, 1166). The ALJ also questioned Plaintiff during the hearing as to how she used a cane when her allegations claimed that she experienced numbness and constant pain in her hands. (R. at 69-70). Nonetheless, the ALJ gave Plaintiff "the benefit of every doubt" and included the use of a cane in her RFC determination. (R. at 50). The inclusion of this limitation in the RFC assessment was a benefit for Plaintiff and its addition did not present any harm or alter the outcome of the ALJ's disability findings. *See Molina*, 674 F.3d at 1115 (error is harmless when it is negligible to the nondisability determination).

Similarly, Plaintiff takes issue with the ALJ's consideration that treating medical providers observed Plaintiff appeared healthy and in no acute distress. (Doc. 14 at 17, R. at 49). The ALJ noted that, "[w]hile this observation is only one among many being relied upon in reaching a conclusion, healthy and comfortable appearance demonstrated by the [Plaintiff] is in sharp contrast to the allegations made herein." (R. at 49). Plaintiff argues that "it is unclear how such observations indicate a degree of functionality inconsistent with Plaintiff's statements." (Doc. 14 at 17). However, as the Commissioner suggested and the Court is inclined to agree, Plaintiff testified that she is in constant pain all day and during the night leading to an inability to stand, walk or sit for long periods of time, and is compelled to sit in a recliner most of her day due to the pain. (Doc. 17 at 8, R. at 67-68, 318-23, 331-39). Examinations also showed that Plaintiff exhibited normal strength, full range of motion in the lower extremities, no edema and normal gait despite tenderness in the spine. (R. at 515-29, 569-1104, 1120-85, Doc. 17 at 4-5). Statements and treatment records such as these clearly show the presence of inconsistencies in the medical evidence. The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential). The ALJ discussed the objective medical evidence and used specific evidence from the record to render her findings. The Court finds the ALJ's reasoning is discernible and is clearly

supported by the medical evidence. If an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [his] path may reasonably be discerned." *Alaska Dept. of Edvtl. Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004); *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (applying this standard to social security).

Additionally, the ALJ found that Plaintiff's limitations improved after treatment. Despite Plaintiff's complaints of pain, the ALJ noted that Plaintiff stated to her providers that her pain improved with Lyrica, hydrocodone, and Tizanidine. (R. at 49, 516-17, 520, 901). The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ acknowledged that Plaintiff used Tizanidine intermittently and hydrocodone "not that often." (R. at 49, 913). The ALJ further recognized that while one treatment note stated Plaintiff's pain was not improving, her treating pain specialist commented that Plaintiff was "really resistant to do anything other than modalities at home." (R. at 49, 918). *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (failure to follow a prescribed course of treatment weighs against a claimant's credibility).

Moreover, the ALJ found Plaintiff's daily activities illustrated she was more capable than alleged. (R. at 50). The ALJ discussed that Plaintiff was able to care for her own personal hygiene and grooming needs, she could manage her own medication using phone alarms, she could prepare simple meals for herself, fold laundry and make the bed, and shopped outside of the home. (R. at 50, 331-40). Plaintiff likewise self-reported to a psychologist that she could care for herself, utilize public transportation, drive a vehicle with increased pain, manage finances, shop outside her home, prepare simple meals and manage medication. (R. at 50-51, 506-14). Although Plaintiff alleged pain during some of her activities, "[e]ven where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they

contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113. Thus, the ALJ's finding that Plaintiff was not as limited as she alleged was reasonable.

Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, Plaintiff's limitation improvements with treatment, and Plaintiff's daily living activities to discount her symptom testimony. There is sufficient evidence present to enable the Court to reasonably discern the ALJ's path to conclude that her decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The ALJ provided specific, clear and convincing reasons to dismiss Plaintiff's symptom testimony and those reasons were supported by substantial evidence.

**B. The ALJ properly considered the medical opinion evidence and the lay witness statement.**

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of her providers, Muhammad Mayer, M.D., Sarah Knievel, M.D., and Ashley Eyer, Nurse Practitioner (NP), by finding them unpersuasive. (Doc. 14 at 7-15). Plaintiff further argues the rejection of her spouse's statement is not supported by substantial evidence. (Doc. 14 at 18-19).

Plaintiff applied for disability benefits after March 27, 2017, and is subject to the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph

(c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[1]

The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

The Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792.

### 1. Dr. Muhammad Nayer

Dr. Nayer submitted a check-box medical source statement regarding Plaintiff's impairments. (R. 566-67). Dr. Nayer opined that Plaintiff could occasionally lift or carry up to five pounds; frequently lift or carry up to ten pounds; stand for up to four hours; sit for up to three hours; could never climb, stoop, kneel, crouch or crawl, and occasionally

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

balance. (R. at 566-67). The ALJ found Dr. Nayer's opinion to be unpersuasive because it was not consistent or supported by the medical record evidence. (R. at 51-52). "We have held that the ALJ may 'permissibly reject []…check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina*, 674 F.3d at 1111-12 (citations omitted). The ALJ found that Dr. Nayer failed to provide an explanation of the evidence he used to rely upon his opinion. (R. at 51).

The ALJ also found that Dr. Nayer's opinion was inconsistent with his own examinations of Plaintiff and were unsupported by the physician's observations and course of treatment. (R. at 51-52). Examinations "showed intact, occasionally reduced, strength and sensation to the bilateral lower extremities with typically full range of motion." (R. at 51). Plaintiff argues that 20 C.F.R. § 404.1520c(c)(2) does not allow an ALJ to rely on inconsistencies within a medical source's own records or statement. (Doc. 14 at 13). Plaintiff is mistaken in their argument. The regulation Plaintiff points to in their argument concerns the definition of consistency.[2] However, Plaintiff has overlooked the very definition of "supportability"—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). It is well within the parameters of an ALJ's duty to discuss and consider a medical source's own records and any inconsistencies found within their records. Thus, Plaintiff's argument is without merit.

The ALJ noted that Dr. Nayer recommended wearing splints at night for Plaintiff's carpal tunnel ailments and routinely filled pain medication with no changes to Plaintiff's treatment. (R. at 52, 542). The ALJ stated that Dr. Nayer's extreme limitations opined in his medical source statement seemed inconsistent with the course of treatment he prescribed for Plaintiff. (R. at 51). Plaintiff argues that a prescription of splints and pain

---

[2] The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. § 404.1520c(c)(2).

medication is not inconsistent in finding Plaintiff was functionally limited. (Doc. 14 at 14). Plaintiff's argument is unpersuasive because the ALJ incorporated those functional limitations in her RFC determination. The ALJ also remarked that Plaintiff's daily activities were inconsistent with Dr. Nayer's opinion because many of her activities such as caring for her hygiene, shopping, preparing meals and folding laundry would require some stooping, crouching and kneeling on her part which Dr. Nayer opined Plaintiff could never perform. (R. at 51-52). An ALJ may properly rely on evidence of a plaintiff's activities to discount a doctor's opinion about the plaintiff's ability to perform simple work. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Plaintiff's final argument takes issue with the ALJ's inclusion in her discussion that the Plaintiff requested Dr. Nayer complete disability forms on her behalf. (Doc. 14 at 13, R. at 52). Plaintiff asserts there is no logical basis for such a statement. (Doc. 14 at 13). It is unclear from the ALJ's discussion as to what purpose inclusion of this statement serves, but it does not appear to be warranted. However, should the ALJ have used this as a reason to find Dr. Nayer's opinion unpersuasive, the Court finds that reliance on such a misstatement was harmless error. *See Molina*, 674 F.3d at 1115 (error is harmless when it is negligible to the nondisability determination). Despite this statement, the ALJ provided additional valid and proper reasons to support her decision regarding Dr. Nayer's opinion.

## 2. Nurse Practitioner Ashley Eyer

NP Eyer submitted a check-box medical source statement regarding Plaintiff's impairments and opined Plaintiff could only sit and stand for less than one hour in an eight hour workday and would need to change position every thirty minutes; she could only lift and/or carry less than five pounds; would need to elevate both legs throughout the day and night; would likely miss work more than four times a month; is 50% limited in reaching, handling, feeling, and fingering, and limited ten percent in seeing. (R. at 52, 454-56). The ALJ found NP Eyer's opinion unpersuasive because the medical source simply checked boxes on a form and offered little explanation as to what evidence was used to form the opinion. (R. at 52). The ALJ also found it was not consistent nor supported by the medical record evidence, and the limitations suggested by NP Eyer were extreme and unsupported.

(R. at 52).

Plaintiff argues there is no basis for rejecting NP Eyer's form, but as the Court has previously discussed above, an ALJ may reject check-box forms if they do not offer an explanation for the basis of their opinion. *See Molina*, 674 F.3d at 1111-12. Plaintiff further argues that NP Eyer referenced an Oswestry evaluation which provided significant explanation for the limitations opined by NP Eyer.[3] (Doc. 14 at 10). However, this questionnaire was completed by Plaintiff and is not based upon any objective findings by a medical source. (R. at 396-97). *See Flaten v. Sec'y of Health and Human Servs.,* 44 F.3d 1453, 1463-64 (9th Cir. 1995) (an ALJ is entitled to discount a doctor's assessments that are based upon the claimant's own reports). The ALJ also relied upon Plaintiff's daily activities to discount NP Eyer's opinion. Plaintiff claimed this is not a factor the ALJ should have used to conclude that NP Eyer's limitations were overreaching. (Doc. 14 at 11). Plaintiff's argument is unpersuasive as the Court has discussed that an ALJ may rely on daily activities to discount a doctor's opinion. *See Garrison*, 759 F.3d at 1012.

The ALJ noted that medical records contained no recommendation that Plaintiff needs to elevate both legs despite the limitation suggested by NP Eyer. (R. at 52). The ALJ further remarked that if Plaintiff were as limited as NP Eyer's opinion implied, she would need to reside in a full-time assisted living facility. (R. at 52). Plaintiff argues these findings by the ALJ are not supported by substantial evidence. (Doc. 14 at 12). However, an ALJ need not adopt wholesale any physician's opinion regarding a claimant's limitations. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

### 3. Dr. Sarah Knievel

Plaintiff asserts that Dr. Knievel's check-box opinion from June 2021 is consistent with NP Eyer's opinion, except Dr. Knievel opined Plaintiff would be absent from work only once per month. (Doc. 14 at 15, R. at 125-27). However, Plaintiff advised that Dr. Knievel's statement was not addressed in the ALJ's decision because the opinion was not available to the ALJ at the time. (Doc. 14 at 15). Plaintiff submitted Dr. Knievel's opinion

---

[3] The Oswestry questionnaire was completed in December 2018, prior to the alleged disability onset date.

to the Appeals Council (AC) as additional evidence for consideration, and the AC found the "evidence does not show a reasonable probability that it would change the outcome of the decision." (R. at 2). The Court finds the AC's decision was correct and the additional opinion is not persuasive. A medical "opinion is all the less persuasive since it was obtained by Appellant only after the ALJ issued an adverse determination." *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). The late submission of Dr. Knievel's opinion offered no reasonable possibility that the new evidence would have changed the ALJ's decision because it was based on conditions already addressed. *See Berkebile v. Berryhill*, 714 Fed. Appx. 649, 651(9th Cir. 2017) (unpublished) (quoting *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

### 4. Mr. Eckdahl's spousal statement

Plaintiff contends that the ALJ summarily rejected the lay witness testimony of Plaintiff's husband. (Doc. 14 at 18-19). The Court finds Plaintiff's argument is without merit. The ALJ specifically stated that she considered the non-medical source opinion of Plaintiff's spouse. (R. at 52). The ALJ noted that the report claimed Plaintiff had difficulty standing and bending, changes position slowly, can fold laundry, care for herself, prepare simple meals, and shop outside the home for short periods of time. (R. at 52, 341-48). The ALJ found the statement consistent with Plaintiff's allegations, but it was not consistent with the preponderance of the objective medical evidence and the course of treatment. (R. at 52). "The ALJ gave reasons for rejecting [Plaintiff's] testimony regarding her symptoms that were equally relevant to the similar testimony of the lay witnesses, and that would support a finding that the lay testimony was similarly not credible." *Molina*, 674 F.3d at 1115. In the present case, Mr. Eckdahl's testimony described the same limitations as Plaintiff's own testimony, thus the ALJ's reasons for rejecting Plaintiff's testimony apply equally to the lay testimony.[4]

---

[4] Given the Court's finding that remand is unnecessary, the Court need not address the Commissioner's arguments regarding the new regulations and whether § 404.1520c(d) supersedes Ninth Circuit precedent requiring "germane reasons" to reject lay witness statements. *E.g.*, *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

## IV. CONCLUSION

The Court finds that substantial evidence supports the Commissioner's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence, and properly considered the medical opinion evidence of record. Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence. The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 6th day of September, 2023.

_____
Douglas L. Rayes
United States District Judge